A03A1914. LANGLEY et al. v. NATIONAL LABOR GROUP, INC.
(586 SE2d 418)

ELDRIDGE, Judge.

Plaintiff/appellee National Labor Group, Inc. ("National") filed this action against defendant/appellant Troy Langley d/b/a Troy Langley Construction & Abatement ("Langley") as a verified complaint on open account in June 1999, setting out a single count for breach of contract. National alleged that under a contract between the parties it provided laborers to Langley for asbestos and lead removal during the period of December 1998 through April 1999; that Langley failed to pay for such services; and that it was entitled to receive a fee based on the labor rates paid the workers, one and one-half percent interest on accounts over thirty days old, and fifteen percent attorney fees.

Langley pro se timely answered by letter, alleging that the parties had agreed that Langley was not obligated to pay National until Langley was paid by "a client." In September 1999, Langley, now represented by counsel, amended his answer to set out his defenses, among them the assertion that any liability to National was in Troy Langley Construction Company, Inc. Additionally, Langley filed a single counterclaim for abusive litigation under OCGA §§ 9-15-14 and 51-7-80 et seq. In late January 2000, the superior court granted National's motion to add defendant/appellant Troy Langley Construction Company, Inc. as a party defendant, the motion as unopposed. Days later, National amended its complaint to add the same as a defendant and to set out three counts styled: breach of contract, verified action on open account, and breach of implied promise to pay. Langley and Troy Langley Construction Company, Inc. ("TLC"), one or both of whom are doing business as Troy Langley Construction & Abatement, Inc., timely filed an unverified answer to the complaint as amended and counterclaimed for interference in contractual relations, bad faith attorney fees, and abusive litigation. By its counterclaims, TLC variously alleged that National had illegally placed a $30,000 lien on the property of Perry Homes for the purpose of denying TLC any payment for its work on Perry Homes' behalf although TLC had "paid numerous [National] invoices" for laborers which National provided in support of TLC's Perry Homes project. National moved to strike TLC's amended answer and for default judgment shortly thereafter, and, on August 23, 2000, filed the instant motion

for partial summary judgment as to Langley's counterclaim and those which TLC later filed.

Following a hearing, the superior court entered an order granting National default judgment by striking TLC's answers as not verified.[1] We dismissed TLC's direct appeal from the foregoing order as interlocutory upon the initial appearance of this case before this Court. *Langley v. Nat. Labor Group*, 249 Ga. App. XXVII (2001) (unpublished). Following the remittitur of our dismissal, the superior court set aside its order granting default judgment and, citing *Five Star Steel Constr. v. Klockner Namasco Corp.*, 240 Ga. App. 736, 739 (1) (c) (524 SE2d 783) (1999), dismissed with prejudice National's verified complaint on open account as an improper cause of action for factual disputes as to the terms of an underlying contract. Further, by a second order entered contemporaneously, the superior court granted National summary judgment as to Langley's counterclaim finding no cognizable claim for attorney fees and litigation costs by answer or counterclaim under OCGA §§ 9-15-14 and 51-7-80 et seq. The superior court also granted National summary judgment as to TLC's counterclaims finding no tortious interference with contract in the absence of evidence showing that National filed an illegal $30,000 lien against the property of Perry Homes as alleged; no abusive litigation as it had done relative to Langley's counterclaim for abusive litigation; and no claim for OCGA § 13-6-11 attorney fees and costs of litigation for no viable independent counterclaim against National.

By this appeal, TLC challenges partial summary judgment for National as error, asserting that it supported its counterclaim for tortious interference with contract by the affidavit of its administrative manager, Wilda Oldenburg; that, although denominated as counterclaims for abusive litigation, its counterclaim to such effect and Langley's individually served only as "notice" of an intent to file claims for abusive litigation under OCGA § 51-7-84,[2] or, if deemed

---

[1] Where an action is brought on a verified open account, the answer must be verified. OCGA § 9-10-112; see also *Harper v. Carroll Tire Co.*, 237 Ga. App. 767, 768 (516 SE2d 811) (1999) ("Where a suit is brought on a verified open account and the defendant's plea does not comply with OCGA § 9-10-112's pleading requirements, the plea is properly struck.") (citation omitted).

[2] OCGA § 51-7-84 provides:

(a) As a condition precedent to any claim for abusive litigation, the person injured by such act shall give written notice by registered or certified mail or statutory overnight delivery or some other means evidencing receipt by the addressee to any person against whom such injured person intends to assert a claim for abusive litigation and shall thereby give the person against whom an abusive litigation claim is contemplated an opportunity to voluntarily withdraw, abandon, discontinue, or dismiss the civil proceeding, claim, defense, motion, appeal, civil process, or other position. Such notice shall identify the civil proceeding, claim, defense, motion,

counterclaims for abusive litigation, dismissal with prejudice incident to the grant of summary judgment was improper under *Generali–U. S. Branch v. Owens*, 218 Ga. App. 584 (462 SE2d 464) (1995); and that its counterclaim for bad faith attorney fees and litigation costs under OCGA § 13-6-11 was proper for the viability of its counterclaim for tortious interference with contract. Such claims of error as without merit, we affirm.

1. TLC's first counterclaim alleged that National filed an illegal $30,000 lien against the property of Perry Homes for tortious interference with its contractual relations. Following a hearing on National's motion for partial summary judgment, the superior court dismissed such counterclaim, finding no factual basis for it. We agree.

On appeal, TLC points only to the affidavit of its administrative manager, Oldenburg, in support of its claim for interference with contract, a document filed the day before the superior court's hearing on partial summary judgment. Pertinently, affiant Oldenburg testified that on or about October 4, 1999, Winter Environmental Services, Inc. ("Winter"), a nonparty, demanded a lien waiver from National before it paid TLC for services provided. This National refused to give, "contending that it had a lien on [Winter's] property for the labor provided by [National]" on the job.

It is well settled that affidavits in support of or in opposition to motions for summary judgment must set forth such facts as would be admissible in evidence. *Resolute Ins. Co. v. Norbo Trading Corp.*, 118 Ga. App. 737, 741 (1) (165 SE2d 441) (1968). "Irrelevant matter should be excluded." OCGA § 24-2-1; *Sarantis v. Kroger Co.*, 201 Ga. App. 552, 553 (411 SE2d 758) (1991). Hearsay, opinions, and conclusions in affidavits are inadmissible on summary judgment. *Davis v. Haupt Bros. Gas Co.*, 131 Ga. App. 628, 629 (2) (206 SE2d 598) (1974). And while a statement in an affidavit that it is based upon personal knowledge is generally sufficient to meet the requirement that affidavits be made upon such knowledge, OCGA § 9-11-56 (e); *Whitaker v. Trust Co. of Columbus*, 167 Ga. App. 360, 361 (1) (306 SE2d 329) (1983), " '[i]f it appears that any portion of the affidavit was not made upon the affiant's personal knowledge, or if it does not affirmatively appear that it was so made, that portion is to be disregarded in considering the affidavit in connection with the motion for summary judgment.' [Cit.]" *Hodges v. Putzel Elec. Contractors*, 260 Ga. App. 590, 596 (3) (580 SE2d 243) (2003). Affidavits which simply

appeal, civil process, or other position which the injured person claims constitutes abusive litigation. (b) An action or claim under this article requires the final termination of the proceeding in which the alleged abusive litigation occurred and must be brought within one year of the date of final termination.

repeat hearsay are not based on personal knowledge and have no probative value. As such, they are inadmissible in summary judgment proceedings. *Sarantis v. Kroger Co.*, supra.

The Oldenburg affidavit relates to National's alleged failure to sign a lien waiver on behalf of nonparty Winter as a condition precedent to Winter paying TLC for work on its behalf. The instant counterclaim, however, alleges that National filed an illegal lien in the amount of $30,000 preventing payment to TLC for services TLC provided to Perry Homes. Inasmuch as the affidavit has no logical bearing on any material fact in issue as true or untrue, it is here irrelevant and inadmissible. OCGA § 24-2-1; *Cook v. State*, 232 Ga. App. 796, 797 (1) (503 SE2d 40) (1998). Moreover, although reciting that it was made upon personal knowledge, the affidavit does not reflect that Oldenburg was present in the context of the facts. Consequently, insofar as the affidavit alleges that TLC made a demand for payment from Winter, that Winter demanded a lien waiver of National, and that National refused "contending that it had a lien," the affidavit was inadmissible as hearsay. OCGA § 24-3-1 (a); *Hodges v. Putzel Elec. Contractors*, supra; *Davis v. Haupt Bros. Gas Co.*, supra; *Sarantis v. Kroger Co.*, supra. Neither will the provisions of OCGA § 9-11-15 operate to automatically amend a counterclaim to conform to evidence introduced prior to trial. *Feely v. First American Bank of Ga.*, 206 Ga. App. 53, 55 (1) (424 SE2d 345) (1992). Nothing of record shows any amendment of the counterclaim in issue.

Accordingly, no error obtained upon the grant of summary judgment as to TLC's counterclaim for interference with contract.

2. Further, TLC claims as error the superior court's grant of summary judgment as to the counterclaims in issue for abusive litigation under OCGA §§ 9-15-14 and 51-7-80 et seq., asserting that summary judgment was improper because, although denominated as counterclaims, these merely gave notice thereof under OCGA § 51-7-84. Alternatively, TLC asserts that summary judgment was error in that the proper method for disposing of a counterclaim for abusive litigation is a dismissal without prejudice. *Generali–U. S. Branch v. Owens*, supra. Such arguments, however, reflect an erroneous understanding of the superior court's disposition of the complained-of counterclaims as on summary judgment alone. This was not the case.

Pertinently, the superior court noted that "[t]he allegations are captioned as counterclaims, although they textually state that they constitute a 'notice' by each defendant to assert claims for abusive litigation under OCGA § 51-7-81.[3] If these are merely 'notices,' they are

---

[3] Langley's and TLC's "counterclaims" for abusive litigation averred that the "Complaint was without a factual or legal basis . . . against [the] Defendant[ ]" and stated: "Notice is hereby given pursuant to OCGA § 51-7-84 that if [the amended complaint] claim is not

not counterclaims and must be dismissed." That such claims gave notice of claims for abusive litigation to follow is not in dispute. Accordingly, the superior court properly dismissed such claims for want of subject matter jurisdiction. OCGA § 9-11-12 (h) (3); *McLanahan v. Keith*, 239 Ga. 94, 96 (236 SE2d 52) (1977), overruled on other grounds, *Little v. Walker*, 250 Ga. 854, 855 (301 SE2d 639) (1983).

Neither was the dismissal of the complained-of counterclaims for abusive litigation error upon summary judgment analysis. In this regard, the superior court properly added to its order that

> even if [the complained-of counterclaims] adequately describe counterclaims for abusive litigation, they fail to meet the statutory conditions necessary for such a claim. . . . Specifically, before filing [such claims], defendants were required to provide [National] written notice of such intention by registered or certified mail. [OCGA § 51-7-84 (a).][4] Second, before defendants could file such a claim, OCGA § 51-7-84 (b) required a final termination in defendants' favor of the action allegedly constituting abusive litigation. . . . *Jacobs v. Littleton*, 241 Ga. App. 403, [404 (1)] (525 SE2d 433) (1999).

Further, claims for abusive litigation under OCGA § 51-7-80 et seq. are disposed of by summary judgment where the notice and final termination requirements of statute are not met, as here. *Davis v. Butler*, 240 Ga. App. 72, 73-74 (1) (a) (522 SE2d 548) (1999). And to the extent that TLC relies on *Generali* for any claim under OCGA § 9-15-14, its reliance is misplaced.

Citing *Glass v. Glover*, 241 Ga. App. 838 (528 SE2d 262) (2000), the superior court correctly held that a claim for OCGA § 9-15-14 attorney fees and litigation costs must be made by motion, not by answer or counterclaim. Id. at 839. Neither was summary judgment for National error upon any OCGA § 9-15-14 claim for the superior court's failure to specify that its dismissal of such claims was without prejudice. See *Generali–U. S. Branch v. Owens*, supra at 585 (premature counterclaim under OCGA § 9-15-14 properly dismissed without prejudice). In this regard, the Georgia Civil Practice Act makes it clear that any dismissal in which dismissal with prejudice is not specified is deemed to be a dismissal without prejudice. OCGA § 9-

dismissed in thirty days from service hereof that defendant shall pursue a claim for abusive litigation pursuant to OCGA § 9-15-14 and 51-7-80, et seq."

[4] Effective July 1, 2000, after the instant counterclaims were filed, OCGA § 51-7-84 (a) was amended to permit prior written notice by overnight delivery. However, nothing of record shows delivery by such means herein.

11-41 (b) (2). Thus, to the extent that the complained-of counter-claims for abusive litigation rested on OCGA § 9-15-14, summary judgment thereon was not error for the superior court's failure to dismiss upon the word "dismissed" alone.

3. Finally, TLC concedes that a defendant may only assert a counterclaim under OCGA § 13-6-11 if it has a viable independent counterclaim. However, TLC argues that its claim for tortious interference with contract remains viable. Inasmuch as we have held the contrary, Division 1, supra, it follows that the grant of summary judgment as to TLC's counterclaim for OCGA § 13-6-11 attorney fees and litigation costs was proper.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). This National has done. Likewise, there was no error for the dismissal of the counterclaims for abusive litigation in this case for want of subject matter jurisdiction.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED AUGUST 13, 2003.

*Cornelison & Ziolo, Rex P. Cornelison III, John A. Ziolo*, for appellants.

*David R. Martinez*, for appellee.