**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 16, 2015**

# In the Court of Appeals of Georgia

A15A1252. LINDA WILLIS v. ALLSTATE INSURANCE BO-062 COMPANY.

BOGGS, Judge.

This case, involving an action on a homeowner's insurance policy issued by Allstate Insurance Company to Linda Willis, appears before us for the second time. The underlying facts are laid out in detail in *Willis v. Allstate Ins. Co.*, 321 Ga. App. 496 (740 SE2d 413) (2013):

> [W]hile in the process of remodeling her home, Willis rented a portable storage unit to hold some of her possessions. Because the unit was placed in her front yard, some of Willis's neighbors complained, and, without notice to Willis, the owner of the storage unit removed it from her yard and put it in the company's storage yard. Willis reported this to Allstate as a theft. Then, the next day Willis's home burned, and Allstate boarded up the house because it determined the house was unsafe. Willis contends other property of hers was stolen from the boarded-up house. Although Willis filed claims for the stolen property, the fire damage to

her home, and the costs of her temporary living expenses, Allstate never paid any of the claims.

Consequently, Willis filed suit on her policy. After this initial suit was removed to federal court, Willis dismissed the action without prejudice. Sometime later she filed an identical suit in Fulton County Superior Court, and, although Allstate was properly served, Allstate failed to answer the complaint, and was in default. Allstate moved to open the default, which the trial court subsequently denied. Thereafter, the trial court entered a judgment on liability.

Before the hearing on damages, the trial court made several rulings: It denied Allstate's motion to exclude the opinion testimony of Willis's expert, denied Allstate's motion to prevent Willis from arguing to the jury that liability was clear, and granted Willis's motion preventing Allstate from contesting liability or offering any defense to liability. Then, the trial court vacated its earlier order on Allstate's motion for partial summary judgment and granted Allstate's motion on Willis's claims for fraud and promissory estoppel. The trial court found that, notwithstanding the entry of the default, Willis's claims for fraud and promissory estoppel failed as a matter of law.

*Willis*, supra, 321 Ga. App. at 497.

Willis appealed, contending the trial court erred by granting summary judgment to Allstate on her claims for fraud and promissory estoppel after it had entered a default judgment against Allstate. Allstate appealed, contending, in pertinent part, that the trial court erred by holding Allstate could not introduce evidence at trial disputing its liability to Willis and by precluding Allstate from offering any defense at trial, including policy defenses. *Willis*, supra, 321 Ga. App at 496. This Court

2

affirmed the grant of summary judgment to Allstate on the fraud and promissory estoppel claims, specifically concluding that "Willis is not entitled to prevail solely because Allstate is in default," because a default does not preclude a defendant from showing that under the facts as deemed admitted, no claim existed which would allow the plaintiff to recover. Id. at 501 (1).

However, we reversed the trial court's ruling "to the extent [that] it ruled that Allstate was prevented from introducing *any* evidence on liability." (Emphasis in original.) Id. at 502 (2). We noted:

> It is axiomatic that a default does not result in the admission of allegations that are not well-pled or that are the result of forced inferences. The failure to answer or to appear at trial serves as an admission of the facts alleged in the complaint, but not of the conclusions of law contained therein. So while a default operates as an admission of the well-pled factual allegations in a complaint, it does not admit the legal conclusions contained therein.

(Citation and punctuation omitted.) Id. at 501-502 (2). Thus, although Allstate waived its opportunity to assert any affirmative defenses included within OCGA § 9-11-8 (c) by failing to timely answer, see *Azarat Marketing Group v. Dept. of Admin. Affairs*, 245 Ga. App. 256, 257 (1) (a) (537 SE2d 99) (2000), "the trial court erred by holding

3

that Allstate cannot contest liability or offer defenses, including policy defenses at trial." *Willis*, supra, 321 Ga. App. at 502 (3).

Following remand, the trial court entertained argument on Allstate's motion for summary judgment on the ground that Willis failed to timely file her complaint in violation of the suit limitation provision in her contract.[1] The trial court granted the motion, relying on *Allstate Ins. Co. v. Sutton*, 290 Ga. App. 154 (658 SE2d 909) (2008), to find that Allstate's actions and settlement negotiations did not waive the contractual limitation provision. Willis appeals this order.

We first note that the majority of the allegations in Willis' appellate brief are not supported by citations to the record, in violation of Court of Appeals Rule 25 (a) (1). As this Court has repeatedly stated, "it is not the function of this court to cull the record on behalf of a party in search of instances of error. The burden is upon the party alleging error to show it affirmatively in the record." (Citation, punctuation, and footnote omitted.) *Helms v. Franklin Builders*, 305 Ga. App. 863 (700 SE2d 609) (2010). Nevertheless, because the record in this case is small, we will exercise our

---

[1] The contractual suit limitation is a policy defense and not an affirmative defense included within OCGA § 9-11-8 (c), such as a statute of limitation, that must be set forth in an answer. See generally *Wright Assoc. v. Rieder*, 247 Ga. 496, 500 (2) (277 SE2d 41) (1981) (workers' compensation statutory employer defense not affirmative defense).

discretion to resolve this appeal on the merits. We also note that the record transmitted to us does not contain a copy of the homeowner's policy issued to Willis. However, it does not appear that the parties contest the policy language.

The record shows that the Allstate policy issued to Willis provided: "No suit or action may be brought against us unless there has been full compliance with all policy terms. Any suit or action must be brought within ***one year*** after inception of loss or damage."[2] (Emphasis in original.) Such suit limitations are enforceable in Georgia, and an insured's compliance with such a provision is a condition precedent to filing a lawsuit based on the policy. *Smith v. Allstate Ins. Co.*, 159 Ga. App. 743, 744 (1) (285 SE2d 82) (1981).

Here, the underlying facts are not disputed. The three losses at Willis' house occurred on February 27, 2006, February 28, 2006, and September 3, 2006. Willis notified Allstate and filed proofs of loss in November 2006, but did not file her first

---

[2] At the time Willis filed her first suit in December 2008, the one-year suit limitation for fire policies had been extended to a two-year suit limitation by Georgia law. See *White v. State Farm Fire & Cas. Co.*, 291 Ga. 306, 308-309 (1) (728 SE2d 685) (2012).

lawsuit against Allstate for its failure to pay until December 16, 2008, well over two years after the date of loss.[3]

In an attempt to circumvent her failure to comply with the applicable suit limitation requirement, Willis argues that Allstate waived the suit limitation in the policy by misleading her during negotiations to "lull her into the false sense of security of believing that liability was clearly accepted . . . so as to delay her past the Statute of Limitation, and / or the time within which the policy required her to file her action in the Courts." In two enumerations of error, Willis contends that the trial court erred in relying on *Allstate v. Sutton*, supra, 290 Ga. App. 154, rather than *Auto-Owners Ins. Co. v. Ogden*, 275 Ga. 565 (569 SE2d 833) (2002), to conclude that Allstate's conduct did not lull Willis into believing that the suit limitation provision in the insurance contract was waived. We disagree.

In *Ogden* we held: "An insurance company may waive the contractual limitation provision where the company leads the insured by its actions to rely on its promise to pay, express or implied." (Citation, punctuation, and footnote omitted.) 275 Ga. at 567 (2). Specifically,

---

[3] The present pro se action was filed in January 2010 without any notice that it was a renewal action. However, the trial court noted that it is a re-file of the original action, and Willis now has an attorney representing her.

6

> [i]f the insurer never denied liability, but continually discussed the loss with its insured with a view toward negotiation and settlement without the intervention of a suit, whether or not this lulled the insured into a belief that the 12-month clause in the contract was waived by the insurer can become a disputed question of fact for the jury.

(Citation, punctuation, and footnote omitted.) Id. However, *Ogden* is distinguishable. There, an insured filed a timely claim for fire damage to his house under his homeowners policy. The insurer agreed that the loss was covered under the policy, approved a contractor to make the repairs, prepared a proof of loss stating a specific amount for the full cost of repair, and issued a check for two-thirds of that amount, withholding the remaining repair cost pending the insured's return of the proof of loss within 15 days. Id. at 565-566. The insured did not meet the 15-day deadline, and the insurer withheld the remaining repair cost. Id. When the insured sued to recover this remaining amount, the insurer sought shelter in the one-year contractual limitation period in the policy. Id. The Supreme Court held that there was a factual dispute as to whether the insurer had waived the limitation period. Id. at 567 (2); compare *Ga. Farm Bureau Mut. Ins. Co. v. Pawlowski*, 284 Ga. App. 183, 184 (1) (643 SE2d 239) (2007) (investigation, negotiation, and rejection of settlement offer do not suggest that insurer attempted to trick insured into believing one-year limitation period would be enlarged).

In the present case, Allstate never agreed that the losses were covered under the policy, never made any payments for the losses, and continuously warned Willis that it was not waiving any policy provisions. The trial court found that from the time Willis placed Allstate on notice of her claims and throughout the course of the proceedings, "the communications between Ms. Willis and Allstate were prefaced on the part of Allstate by the specific statement that, 'We are not waiving any defenses. We expect our insured to comply with all terms and conditions.' That was repeated on various occasions" until Allstate ultimately denied Willis' claims based on her failure to cooperate in the claims process and material misrepresentations she made under oath. Indeed, the record contains numerous letters and emails from Allstate to Willis, and nearly all of them include similar language. For example, one of the first letters, written on May 2, 2006, included the following:

> Please understand that no action of Allstate or its representatives should be considered by you to be a waiver of any of the terms, conditions, or provisions contained in the Allstate policy of insurance or found under the laws of the State of Georgia. On the contrary, **Allstate will continue to insist upon strict compliance with the terms, conditions, and provisions contained in the Allstate policy of insurance and the laws of the State of Georgia. Should the circumstances arise please be aware that Allstate will avail itself of all defenses available under the terms and conditions of the policy as well as applicable law.**

(Emphasis in original.) Another letter, written on June 29, 2006, stated:

8

With respect to the loss which occurred on February 28, 2006 . . ., you are advised that the Allstate Insurance Company reserves all rights and defenses which it has in conjunction with the policy numbered 021782701.

We further notify you that any activity on our part by way of investigation, damage determination, or emergency advance payments to you, does not constitute a waiver of our rights.

We are reserving our right to later deny coverage obligation under the policy and assert a defense of no coverage under the policy because you have failed to mitigate and protect your personal property from further damage. . . .

The letter then concluded with the same language used in the May 2, 2006 letter. September 21, 2006 and September 28, 2006 letters detailing how to complete a proof of loss specifically noted, "Receipt of these instructions is not a waiver of Allstate's rights or defenses under the policy. These forms and materials are provided simply to assist you in completing them properly." The letters then mention, once again, that Allstate does not waive any of the terms and conditions found in the policy and will continue to insist on strict compliance with the policy terms and conditions. The September 28, 2006 letter also advised Willis that her claim was being handled under a reservation of rights and included a copy of her policy, directing her to read the entire policy thoroughly so as to comply with its terms and conditions.

On November 29, 2007 and December 4, 2007, Allstate sent letters in which it responded to a request to set forth its position relative to the three claims. Allstate wrote:

> Please be advised that Allstate will not further consider the above referenced claims. As you know, during the course of its investigation into the above referenced claims, Allstate on numerous occasions requested that you provide or produce further information substantiating your claims. That information was not provided in violation of the terms of the subject policy of insurance which obligated you to cooperate with Allstate and provide reasonably available information. In addition, during the course of its investigation, Allstate learned that you had misrepresented material facts related to the claim and your claimed loss and damage in violation of the policy of insurance and the laws of the State of GA. Finally, please be aware that the time period for you to bring a legal action seeking recovery under the above referenced policy of insurance has expired.

Thereafter, in response to an August 19, 2008 demand letter from Willis' counsel, Allstate advised Willis to examine her policy and the suit limitation period:

> That policy contained a suit limitation period which obligated Ms. Willis to file suit, if at all, within one year of the date of the loss. Georgia law has subsequently extended the suit limitation period to two years in all homeowner's policies of insurance issued in the State of Georgia. However, that modification does not alter the conclusion that the time to bring suit on any claim specified in your letter has expired.

The trial court correctly found that this case closely resembles *Sutton*, supra, 290 Ga. App. 154. In *Sutton*, the trial court denied the insurer summary judgment, finding a question of fact concerning whether the insurer had waived the policy limitation provision through its settlement negotiations with the insured. Id. at 156 (1). This Court reversed, specifically holding:

> [S]ettlement negotiations do not always give rise to a jury question on whether the policyholder was led to believe that he need not file suit, even if they continue throughout the policy's limitation period. Mere negotiation for settlement, unsuccessfully accomplished, is not that type of conduct designed to lull the claimant into a false sense of security so as to constitute a waiver of the limitation defense. And where inconclusive settlement negotiations were explicitly conditioned on the policy terms, the policyholder cannot create a jury issue by claiming a belief that the insurer would waive the contractual limitation provision.

(Citations, punctuation, and footnotes omitted.) Id. at 156-157 (1). See also *Shelter America Corp. v. Ga. Farm Bureau Mut. Ins. Co.*, 209 Ga. App. 258, 259 (1) (433 SE2d 140) (1993). In *Shelter America Corp*, this Court found no showing of any affirmative statement or other act by the insurer that would lead the insured to believe that the insurer would waive the contractual limitation. Specifically, we noted that the insurer explicitly stated on three occasions that no contractual provisions were waived and the parties' inconclusive settlement negotiations were explicitly conditioned on the policy terms. Id.

11

Although Willis argues that Allstate fraudulently induced her to believe that it intended to accept her claims and did not intend to enforce the suit limitation provision, she points to no evidence – slight or otherwise – of any fraudulent inducement. In fact, this court affirmed the trial court's grant of summary judgment to Allstate on Willis' fraud and promissory estoppel claims. *Willis*, supra, 321 Ga. App at 501 (1). It is undisputed that "Allstate undertook several actions to protect the premises and engaged in discussions with Ms. Willis," but it is equally "clear that any negotiations and any activities that took place were subject to . . . repeated representations" that Allstate was not waiving any policy defenses, and Willis has not presented "an affirmative promise or other act waiving the limitation."[4] *Stapleton v. General Accident Ins. Co.*, 236 Ga. App. 835, 838 (512 SE2d 645) (1999); *Suntrust Mortgage, Inc. v. Ga. Farm Bureau Mut. Ins. Co.*, 203 Ga. App. 40, 42 (416 SE2d 322) (1992); *Draughn v. United States Fidelity & Guaranty Co.*, 144 Ga. App. 272, 273 (241 SE2d 52) (1977). As in *Sutton*, Allstate in this case "explicitly conditioned

---

[4] In a footnote, Willis notes that "ALL OF ALLSTATE'S LETTERS WERE SENT TO AN ADDRESS THAT ALL STATE KNEW PLAINTIFF NO LONGER RESIDED [sic.]." However, this argument has been waived since the record does not show that Willis raised the argument in the trial court. See *Locke's Graphic & Vinyl Signs v. Citicorp Vendor Finance*, 285 Ga. App. 826, 828 (2) (a) (648 SE2d 156) (2007). In addition, many of the letters in the record show that they were sent to a post office box address supplied by Willis or to Willis' counsel.

its settlement negotiations with [Willis] on the policy terms" using the same language used in the *Sutton* case. *Sutton*, supra, 290 Ga. App. at 157 (1). The trial court did not err in relying on *Sutton* to find "no showing in this record of any affirmative statement or other act by Allstate that would lead [Willis] to believe that the insurer would waive the contractual limitation" and in granting summary judgment to Allstate. (Citation and punctuation omitted.) Id.

*Judgment affirmed. Doyle, C. J. and Phipps, P. J., concur*.